# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| SANDRA FOY JOHNSON, individually, and on behalf of the ESTATE of DONALD JOHNSON, deceased, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) C/A No.:<br>)<br>) |
| v. | )<br>) JURY TRIAL DEMANDED |
| CORIZON HEALTH, INC., a Tennessee Corporation; CORIZON LLC, a Missouri limited liability company; JOHN WILCHER in his capacity as CHATHAM COUNTY SHERIFF; CLAYTON M. RAMSU, M.D.; and JOSEPH G. MOYSE, M.D., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

COMES NOW, Plaintiff, Sandra Foy Johnson, individually and on behalf of the Estate of Donald Johnson, deceased, by and through counsel, and files this action against the above-named Defendants, respectfully showing the Court as follows:

### INTRODUCTION

1.

This is a civil rights action for relief from violations of rights guaranteed by the Fourth, Eighth, and/or Fourteenth Amendments to the Constitution of the United States, Title 42, Section 1983 of the United States Code, the laws of the United States, and the laws of the State of Georgia.

2.

Donald Johnson died in the custody of the Chatham County Sheriff because the Sheriff's for-profit healthcare contractor abandoned its duty to monitor Mr. Johnson's health.

3.

Mr. Johnson, who suffered from serious medical conditions including hypertension and hyperlipidemia, died because Corizon physicians failed to adequately monitor Mr. Johnson's blood pressure and provide Mr. Johnson with the medication necessary to control his illnesses.

4.

Donald Johnson's wife, Sandra Foy Johnson, now brings this case on behalf of herself and on behalf of Mr. Johnson's Estate, to redress Mr. Johnson's wrongful death and Corizon's and the Sheriff's depravation of Mr. Johnson's rights as guaranteed by the Constitution and laws of the United States and the state of Georgia.

## JURISDICTION

5.

This Court has jurisdiction under 28 U.S.C. § 1331 because this action raises claims that turn on questions of federal law.

6.

This Court also has supplemental jurisdiction over state-law claims which arise from the same facts and circumstances, pursuant to 28 U.S.C. § 1367.

7.

Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391 because the events leading to the claims occurred in this district and division.

## PARTIES

8.

Plaintiff SANDRA FOY JOHNSON is the duly appointed Administratrix of the Estate of Donald Johnson, Deceased, Chatham County Probate Case No. 2015-J-4129, and at all time relevant is and was a citizen of the United States of America, residing in the state of Georgia.

9.

Sandra Foy Johnson was the wife of Donald Johnson.

10.

In bringing this action against the above-named Defendants, Plaintiff Sandra Foy Johnson acts in her individual capacity as the wife of Donald Johnson and in her representative capacity for the benefit of, and on behalf of, the Estate of Donald Johnson, and the Decedent's next of kin.

11.

Prior to his death, Decedent Donald Johnson was a citizen of the United States of America, residing in the state of Georgia, and entitled to the protections of the Constitution and laws of the United States and the Constitution and laws of the State of Georgia.

12.

Defendants CORIZON HEALTH, INC. and CORIZON, LLC—together, the "Corizon Defendants"—are Delaware and Missouri entities, respectively. Corizon Health, Inc. contracted with Chatham County to provide physical and mental health care, screening, assessment, treatment, and attention to those inmates detained at the CCDC.

13.

JOHN WILCHER is a resident of Chatham County and the state of Georgia. He is sued in his official capacity as the Sheriff of Chatham County.

14.

Defendant CLAYTON M. RAMSU, M.D. ("Dr. Ramsu") is an individual and upon information and belief is a resident of the state of Georgia. At times relevant to this Complaint, Dr. Ramsu was an employee of Corizon and a medical provider at Chatham County Detention Center.

15.

Defendant JOSEPH G. MOYSE, M.D. ("Dr. Moyse") is an individual and a resident of the state of New York and subject to the jurisdiction of this Court under the Georgia Long-arm Statute. At times relevant to this Complaint, Dr. Moyse was a temporary employee of Corizon and medical provider at Chatham County Detention Center.

# FACTUAL ALLEGATIONS

16.

The Chatham County Sheriff's Office ("CCSO") and Chatham County ("the County") jointly operate the Chatham County Detention Center ("CCDC").

17.

Both the CCSO and the County have a legal obligation to provide medical care to the inmates housed at the CCDC.

18.

The County and CCSO contracted with Corizon Health, Inc. ("Corizon") for Corizon to provide medical care to the inmates detained at the CCDC.

19.

On June 13, 2014, three and a half months before entering the CCDC, Donald Johnson was examined at Memorial Medical Center by Dr. Roel Laygo, M.D. Mr. Johnson was diagnosed with chronic but "controlled" hypertension, and chronic hyperlipidemia that was "controlled."

20.

An accurate copy of the June 13 Medical Report is attached as Exhibit "A."

21.

On August 28, 2014, Donald Johnson surrendered to law enforcement and was transported to the CCDC.

22.

When he arrived at the CCDC, Corizon staff gave Mr. Johnson an intake health screening.

23.

Mr. Johnson reported that he had a history of hypertension and diabetes.

24.

Mr. Johnson told Corizon staff that he took medications for both disorders.

25.

Mr. Johnson's blood pressure was 178/106. His blood sugar was 132.

26.

An accurate copy of Mr. Johnson's "Intake Module" is attached as Exhibit "B."

27.

Within days of Mr. Johnson's entry into the CCDC, his daughter, Rochon Gordon, notified Corizon staff of her father's prescribed medications.

28.

These medications were necessary for controlling the illnesses identified or diagnosed by Dr. Laygo.

29.

Because of Mr. Johnson's medical history, on September 12, 2014, he received an electrocardiogram ("ECG") The results of that ECG were "abnormal."

30.

An accurate copy of the September 12, 2014 ECG is attached as Exhibit "C."

31.

On September 16, 2014, Corizon staff completed a "H&P Module" interview with Mr. Johnson. Mr. Johnson again reported that he took medication to treat hypertension including Bystolic 5mg (daily) and Benicar HCT 40-25mg (daily).

32.

An accurate copy of the H&P Module is attached as Exhibit "D."

33.

Based on the results of H&P evaluation, the ECG, and Mr. Johnson's history of hypertension and hyperlipidemia, Dr. Charles Pugh ordered that Mr. Johnson's blood pressure be monitored three times per week.

34.

Dr. Pugh also wrote prescriptions for medication necessary to control Mr. Johnson's hypertension.

35.

From September 1, 2014, until September 24, 2014, Mr. Johnson's blood pressure was checked by Corizon employee Diana Godbee on the following occasions: 9/5/2014; 9/11/2014; 9/15/2014; 9/17/2014; 9/19/2014; 9/22/2014; and 9/24/2014.

36.

An accurate copy of Mr. Johnson's "Blood Pressure Record" is attached as Exhibit "E."

37.

During the blood pressure checks performed by Ms. Godbee, Mr. Johnson's systolic blood pressure ranged from 151 mm Hg to 176 mm Hg. His diastolic blood pressure ranged from 86 mm Hg to 115 mm Hg. *See* Exhibit "E."

38.

After September 24, 2014, Mr. Johnson's medical care should have been supervised by either Dr. Ramsu or Dr. Moyse, who had been hired by Corizon on a temporary basis to provide medical care to inmates at the CCDC.

39.

Dr. Ramsu and/or Dr. Moyse were responsible for Mr. Johnson's care until the date of his death. Dr. Ramsu and/or Dr. Moyse should have known that Mr. Johnson was suffering from hypertension and hyperlipidemia, serious medical conditions.

40.

Donald Johnson's regular blood pressure checks ceased after September 24, 2014.

41.

Upon information and belief, neither Dr. Ramsu nor Dr. Moyse ordered Corizon nurses to check Mr. Johnson's blood pressure, nor did they personally check Mr. Johnson's blood pressure.

42.

For the next seven weeks, from September 25, 2014 through November 13, 2014, a Corizon-employed physician should have monitored Mr. Johnson's condition including blood pressure checks at regular intervals.

43.

Neither Dr. Ramsu nor Dr. Moyse sufficiently monitored Mr. Johnson's condition, including ordering additional blood pressure checks, during the time Mr. Johnson was under their supervision and care.

44.

If Corizon staff had monitored and controlled Mr. Johnson's hypertension and hyperlipidemia, Mr. Johnson would still be alive.

45.

On November 13, 2014, at 5:31 p.m., Deputy Christopher May found Donald Johnson in medical distress in his cell.

46.

Mr. Johnson was half-on, half-off of his cellmate's bed in a semi-reclined position, unable to sit up.

47.

Mr. Johnson's cellmate, Anthony Joyner reportedly told Deputy May, "Something's wrong with my roommate."

48.

According to Deputy May, it "looked like [Mr. Johnson's medical distress] might have been a muscle spasm, like in his back or something. So I didn't really think too much of it."

49.

Deputy May left the cell with the intent to "let the corporal know what was going on there."

50.

After Deputy May left the cell, Joyner began banging on the door to alert Deputy May that Mr. Johnson was in urgent need of medical care.

51.

Deputy May radioed a "Signal 55" call, which indicates a medical emergency, at 5:33 p.m.

52.

Responding to the "Signal 55" call, Sgt. F. Williams entered Donald Johnson's cell at 5:37 p.m.

53.

Nurse Neisler, a Licensed Professional Nurse working for Corizon, also responded. She was the first healthcare professional to respond to the "Signal 55" call.

54.

Nurse Neisler found Mr. Johnson unconscious. She could not locate his pulse.

His chest did not rise and fall. Nurse Neisler began Cardiopulmonary Resuscitation ("CPR").

55.

Nurse Neisler waited five minutes before telling guards to call "911".

56.

An accurate copy of the Corizon Progress Note is attached as Exhibit "F."

57.

As Neisler performed CPR, Lovett left the cell. He placed phone calls to CCSO superiors, Captains Haley, Barbour, and Bryant. He did not dial "911."

58.

At 5:49 p.m.—14 minutes after Donald Johnson was found unconscious, with no breath or pulse apparent, and seven minutes after Nurse Neisler told guards to dial "911"— a deputy instructed CCDC Central Control Officer McCray to call "911."

59.

An accurate copy of the Watch Commander Log is attached as Exhibit "H."

60.

One hour and 12 minutes after Nurse Neisler found Mr. Johnson unconscious in his cell, Donald Johnson finally arrived at Memorial Medical Center at 6:45 p.m., where he was promptly pronounced dead.

61.

Dr. Edmund Donoghue, Reginal Medical Examiner for the Georgia Bureau of Investigation Division of Forensic Sciences, performed an autopsy on Mr. Johnson's body. According to Dr. Donoghue's investigation, Mr. Johnson "died of coronary atherosclerosis. Hypertensive cardiovascular disease and diabetes mellitus were significant contributing conditions."

62.

An accurate copy of the Forensic Report is attached as Exhibit "I."

63.

Lance Lang, an Internal Affairs investigator with the CCDC, completed a nine-page Investigative Report into Mr. Johnson's death.

64.

An accurate copy of Mr. Johnson's Medication Administration Record is attached hereto as Exhibit "J."

65.

Upon information and belief, no disciplinary action was taken against any employee of CCSO or Corizon regarding Donald Johnson's medical care and subsequent death.

**COUNT I — Deliberate Indifference to Mr. Johnson's Serious Medical Needs under 42 U.S.C. § 1983 (Against Corizon Health, Inc., Corizon, LLC)**

66.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 65 as fully set forth above.

67.

Count I is brought against Corizon Defendants pursuant to 42 U.S.C. § 1983 for deliberate indifference to the critical medical needs of Mr. Johnson, as an individual with coronary atherosclerosis and hypertensive cardiovascular disease who required testing and treatment to prevent substantial health deterioration and even death.

68.

At all times relevant to this Complaint, Corizon was acting under color of state law by performing functions traditionally the exclusive prerogative of the state.

69.

Corizon and/or its employees knew or should have known when Mr. Johnson arrived at the CCDC that he had serious medical conditions and that if these conditions were not adequately monitored and addressed, they could result in serious, irreparable harm and even death.

70.

By September 12, 2014, Corizon and or its employees knew or should have known, from Mr. Johnson's statements during his intake exam, his previous medical history, or the results of Mr. Johnson's electrocardiogram, that Mr. Johnson's cardiovascular condition was dire and, if not adequately monitored and addressed,

could result in serious irreparable harm and even death.

71.

Instead of addressing Mr. Johnson's urgent medical needs, Corizon staff ceased monitoring Mr. Johnson's blood pressure on a regular basis after September 24, 2014.

72.

Despite knowledge of Mr. Johnson's serious medical needs, Corizon and its employees or agents were deliberately indifferent to those serious medical needs in failing to provide the necessary medical care and treatment to Mr. Johnson.

73.

Corizon and its employees or agents knew that taking no action and insufficient action could result in the rapid and permanent deterioration of Mr. Johnson's health and even his death.

74.

At all times relevant to this Complaint, it was Corizon's widespread custom, policy, practice, and/or procedure to outright deny medical treatment of, or be deliberately indifferent to, the serious medical needs of Mr. Johnson and other inmates detained or incarcerated at the Chatham County Detention Center who had serious and potentially expensive medical problems.

75.

As a direct and proximate result of Corizon's institutional outright denial of medical treatment and/or deliberate indifference toward Mr. Johnson's serious medical needs, Mr. Johnson suffered great physical injury, pain, discomfort, and mental anguish in violation of his constitutional rights guaranteed by § 1983 and the Fourteenth Amendment.

76.

As a result, Mr. Johnson suffered damages in an amount to be determined at trial. Plaintiff also seeks reasonable attorney's fees and costs, pre-judgment interest, and further relief as the Court deems appropriate.

77.

WHEREFORE, Plaintiff respectfully requests this Court to (1) enter judgment

declaring that the acts and omissions of Defendant Corizon, as set forth above, violate rights secured to Mr. Johnson by the Fourteenth Amendment to the Constitution of the United States, (2) that the Court award actual, compensatory, and punitive damages to Mr. Johnson, (3) the Court require Defendant Corizon to pay the legal costs and expenses herein including reasonable attorney's fees, and (4) that the Court grant such further relief as it deems appropriate.

**COUNT II ---- Sheriff's Policy or Custom of Deliberate Indifference under 42 U.S.C.A. § 1983 (Against Sheriff Wilcher in his official capacity)**

78.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 77 as fully set forth above.

79.

Count II is brought against Defendant Wilcher in his official capacity as Sheriff of Chatham County, pursuant to 42 U.S.C. § 1983, for deliberate indifference to the critical medical needs of Donald Johnson, an individual with coronary atherosclerosis and hypertensive cardiovascular disease that required treatment to prevent substantial health deterioration and even death.

80.

Al St. Lawrence was Chatham County Sheriff at all times relevant to this complaint. St. Lawrence knew that medical care at the jail was inadequate and that, if Mr. Johnson's condition was not adequately monitored and addressed, it could result in serious irreparable harm and even death.

81.

Senior Corizon healthcare staff explicitly warned the Sheriff of the dire medical conditions at the CCDC and complained that, if the condition was not adequately monitored and addressed, it could result in serious harm to inmates' health, and even the deaths of inmates.

82.

The Sheriff adopted a custom or practice of supporting Defendant Corizon's decision to avoid providing adequate medical care to inmates detained at the CCDC.

83.

Despite knowledge of inmates' serious medical needs, the Sheriff was deliberately indifferent to those serious medical needs in failing to direct Corizon Defendants to provide the necessary medical care and treatment to inmates.

84.

The County and the Sheriff each have been aware that Corizon is deliberately indifferent to the medical needs of inmates, provides poor care, and regularly violates the law in the execution of its contract with the County.

85.

At all times relevant to this complaint, it was the Sheriff's widespread custom, police, practice, and/or procedure to support Corizon's decisions to deny medical treatment of, or be deliberately indifferent to, the serious medical needs of the Plaintiff and other inmates incarcerated at the CCDC who had serious and potentially expensive medical problems.

86.

As a direct and proximate result of the Sheriff's institutional denial of medical treatment and/or deliberate indifference toward Plaintiff's serious medical needs, Donald Johnson suffered great physical injury, plain, discomfort, and mental anguish in violation of his constitutional rights guaranteed by § 1983 and the Fourteenth Amendment.

87.

As a result, Donald Johnson suffered damages in an amount to be determined at trial. Plaintiff also seeks reasonable attorney's fees and costs, pre-judgment interest, and further relief as the Court deems appropriate.

88.

WHEREFORE, Plaintiff respectfully requests this Court to (1) enter judgment declaring that the acts and omissions of Defendant Wilcher—who, as current Chatham County Sheriff steps into the shoes of St. Lawrence for purposes of this action—as set forth above, violate rights secured to Mr. Johnson by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, (2)

that the Court award actual, compensatory, and punitive damages to Plaintiff, (3) the Court require Defendant Wilcher to pay the legal costs and expenses herein including reasonable attorney's fees, and (4) that the Court grant such further relief as it deems appropriate.

**COUNT III --- Individual Corizon Defendants' Deliberate Indifference to Mr. Johnson's Serious Medical Needs Under 42 U.S.C. § 1983 (Against Individual Corizon Defendants: Ramsu and Moyse)**

89.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 88 as fully set forth above.

90.

Count III is brought against Defendant Rams and Moyse pursuant to 42 U.S.C. § 1983 for deliberate indifference to the critical medical needs of Mr. Johnson, as an individual with coronary atherosclerosis, hypertensive cardiovascular disease.

91.

At all times relevant to this Complaint, Defendants Ramsu and Moyse were acting under color of state law as employees of an entity performing functions traditionally the exclusive prerogative of the state.

92.

As a direct and proximate result of the individual Corizon Defendants' denial of medical treatment and/or deliberate indifference toward Mr. Johnson's serious medical needs, Mr. Johnson suffered great physical injury, pain, discomfort, and mental anguish in violation of his constitutional rights guaranteed by § 1983 and the Fourteenth Amendment.

93.

As a result, Mr. Johnson suffered damages in an amount to be determined at trial. Plaintiff also seeks reasonable attorney's fees and costs, pre-judgment interest, and further relief as the Court deems appropriate.

94.

WHEREFORE, Plaintiff respectfully requests this Court to (1) enter judgment declaring that the acts and omissions of the individual Corizon Defendants, as set

forth above, violate rights secured to Mr. Johnson by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, (2) that the Court award actual, compensatory, and punitive damages to Mr. Johnson, (3) the Court require individual Corizon Defendants to pay the legal costs and expenses herein.

### COUNT IV --- Wrongful Death (Against All Defendants)

95.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 94 as fully set forth above.

96.

As is more fully described above, Mr. Johnson's death was preventable. Yet each of the defendants herein failed or refused to fulfill their obligation to provide him with medical care. Mr. Johnson died as a result of the intentional, and negligent acts of each of the Defendants.

97.

As a direct and proximate result of the Defendants' wrongful acts, Donald Johnson died by homicide.

98.

Mr. Johnson's death was a wrongful death within the meaning of the Georgia Wrongful Death Act, Ga. Code Ann. § 51-4-1, *et seq*. Section 51-4-2 provides a right of action for the wrongful death of a spouse killed by homicide.

99.

WHEREFORE, Sandra Foy Johnson seeks judgment against the Defendants, jointly and severally, for: (a) the full value of the life of Donald Johnson; (b) the costs of suit and reasonable attorney's fees; and (c) at the court grant such further relief as it deems appropriate.

RESPECTFULLY SUBMITTED, this 24th day of September, 2016.

{Signature appears on following page.}

/s/ Cameron C. Kuhlman
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
CAMERON C. KUHLMAN
Georgia Bar Number: 596159
*Attorneys for Plaintiff*

THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com
cameron@claibornefirm.com